UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

COREY ISAACSON,                                    CIVIL NO. 14-4592 (JNE/JSM)

      Petitioner,

v.                                                 <u>REPORT AND RECOMMENDATION</u>

STATE OF MINNESOTA;
BECKY DOOLY, *Warden,*
*Moose Lake Correctional Inst.*;
LORI SWANSON,
*Minnesota State Attorney General*; and
ANTHONY SPECTOR,
*Meeker County Attorney*,

      Respondents.


JANIE S. MAYERON, United States Magistrate Judge

The above matter came before the undersigned United States Magistrate Judge upon Petitioner Corey Isaacson's Amended Petition Under 28 U.S.C. 2254 For Writ of Habeas Corpus by a Person in State Custody [Docket No. 25]. The matter has been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1.

## I.     FACTUAL BACKGROUND

On May 10, 2012, Petitioner Corey Isaacson ("Petitioner") was convicted in Meeker County, Minnesota for felony driving while impaired ("DWI"), felony refusal to submit to chemical testing, driving after revocation of driver's license, and fleeing a peace officer in a motor vehicle. <u>State v. Isaacson</u>, 2013 WL 4710650, at *2 (Minn. Ct. App. Sept. 3, 2013) ("<u>Isaacson I</u>"). The facts underlying Petitioner's convictions, and relevant to the habeas petition, are as follows: In the early morning hours of August 14,

2011, Deputy Sheriff Jeffrey Pedersen observed erratic driving by an SUV, which Deputy Pedersen believed indicated that the driver was either impaired or distracted. Id., at *1. Deputy Pedersen stopped the SUV, and Petitioner exited the vehicle. Id. As Petitioner approached Deputy Pedersen's squad car, Deputy Pedersen observed that he had difficulty maintaining his balance. Id. Deputy Pedersen saw an open can of beer on the console of the SUV, and noticed a very strong odor of alcohol emanating from Petitioner. Id. Deputy Pedersen also observed that Petitioner's eyes were bloodshot and watery, and his speech was occasionally slurred. Id. Based on his observations of Petitioner's driving and conduct, Deputy Pedersen believed that Petitioner was under the influence of alcohol. Id. When Petitioner refused to perform the standardized field sobriety tests requested by Deputy Pedersen, Deputy Pedersen arrested him on probable cause of driving while impaired and transported him to the jail. Id.

Petitioner was taken to the jail booking interview room, a private room equipped with video recording capabilities. Respondent's Appendix Part I ("Appx. I"), Ex. 1 (Omnibus Order of Meeker County District Court), p. 6 [Docket No. 30-1]. The room contained a desk with a laptop, phone and phonebooks. Id. At the start of the interview, Deputy Pedersen placed a digital tape recorder in the center of the desk between himself and Petitioner. Id., p. 7. Deputy Pedersen then activated the tape recorder and administered the operative Minnesota Implied Consent Advisory to Petitioner.[1] Id.

---

[1]     The Minnesota Implied Consent Advisory informed drivers that: (1) Minnesota law requires a person to take a test to determine if the person is under the influence of alcohol; (2) refusal to take a test is a crime; (3) if a peace officer has probable cause to

The following colloquy took place between Deputy Pedersen and Petitioner:

| | |
|---|---|
| Deputy: | This is a taped implied consent statement taken by Deputy Jeff Pedersen, Badge Number 124. |
| Petitioner: | I refused it. |
| Deputy: | Regarding CFS Number 11008347.  This statement will be taken – be taken at the Meeker County Jail booking interview room, |
| Petitioner: | (Indiscernible.) |
| Deputy: | On August 14th, 2011 at approximately 0146 hours. |
| Petitioner: | I studied law for years. |
| Deputy: | Corey Christopher Isaacson, I believe you have been – been driving, operating or controlling a motor vehicle in violation of Minnesota's DWI laws.  You've been placed under arrest for this offense.  Minnesota law – Minnesota law requires you to take a test to determine if you are under – under the influence of alcohol.  Refusal to take a test is a crime. |
| Petitioner: | So okay.  I refused it.  Give me the charge.  Take me to my jail cell, whatever. |
| Deputy: | Before making your decision about testing you have the right to consult with an attorney. |
| Petitioner: | (Indiscernible.) |
| Deputy: | If you wish to do – if you wish to do so, a telephone directory will be made available to you.  If you are unable to contact an attorney, you must make the decision on your own.  You must make your decision within a reasonable period of time. |
| Petitioner: | I have a right to an attorney. |
| Deputy: | If the test if unreasonably delayed or if you refuse to make a decision, you will be considered to have refused the test. |
| Petitioner: | I was confused.  I didn't know what to do without an attorney. |
| Deputy: | Do you understand what I've just explained? |
| Petitioner: | No. |

---

believe the person has violated the criminal vehicular homicide and injury laws, a test will be taken with or without the person's consent; and (4) the person has the right to consult with an attorney, but only to the extent that it does not unreasonably delay administration of the test.  Minn. Stat. § 169A.51, subd. 2 (2010).

| | |
|---|---|
| Deputy: | What don't you understand about it? |
| Petitioner: | Well get an attorney or something. |
| Deputy: | You have time to make a phone call to call an attorney. |
| Petitioner: | Oh, yeah, then they got to take me to my jail cell. |
| Deputy: | So you're not going to call an attorney? |
| Petitioner: | I don't know how. |
| Deputy: | There's a phone right here. |
| Petitioner: | I don't know how to do that. |
| Deputy: | Well we can help you with the phone.  Do you have an attorney in mind? |
| Petitioner: | I have no idea. |
| Deputy: | You don't know how to operate a phone? |
| Petitioner: | I just drove across the country from Baltimore over here.  I have no idea what you're talking about. |
| Deputy: | Okay.  You don't – you understand you're at the Meeker County Jail.  Is that correct? |
| Petitioner: | I don't even know where it's at. |
| Deputy: | Okay.  Do you understand the first part of the sentence, ah… |
| Petitioner: | No, I don't understand it – (Indiscernible.) |
| Deputy: | You've been placed under arrest for um – |
| Petitioner: | You can't question me after I ask for a lawyer. |
| Deputy: | Okay. |
| Petitioner: | Like I studied law. |
| Deputy: | So I'm going to ask you again. |
| Petitioner: | You got that recorded? |
| Deputy: | It's recorded here.  It's on camera. |
| Petitioner: | (Indiscernible.) |
| Deputy: | So I'm going to ask you again, do you wish to consult with an attorney? |
| Petitioner: | You honestly can't question me (Indiscernible) <u>Miranda</u>.  <u>Arizona v. Miranda</u>. |
| Deputy: | I understand that.  I'm asking right now regarding the implied consent. |
| Petitioner: | (Indiscernible.) |
| Deputy: | Do you want to consult with an attorney? |
| Petitioner: | No, I don't know what you're talkin' about. |
| Deputy: | What don't you understand?  I'm trying to explain this to you. |
| Petitioner: | I plead the fifth. |
| Deputy: | Do you understand that refusal to take a test is a crime? |
| Petitioner: | I have no idea what you're talking about. |

Deputy:       So I'm going to read this again.  Christopher, Corey Christopher Isaacson, I believe you have been driving, operating or controlling a motor vehicle in violation of Minnesota's DW – DWI laws.  You've been placed under arrest for this offense.

Petitioner:   Too tired to understand what you're…

Deputy:       You're too tired to understand that?  So I'm going to mark no on here that ah, for my talking with you now, Corey, at this time you do not wish to consult with an attorney.   Is that correct?

Petitioner:   (Indiscernible.)

Deputy:       I'm giving you the opportunity to use the phone here to consult with an attorney.  I understand you're tired.  I under –

Petitioner:   I already told you.  You can't question me no more, (indiscernible), attorney, under Arizona v. Miranda.  Got that recorded?  I'm tired.

Deputy:       Will you take a breath test?

Petitioner:   Take me to my cell.

Deputy:       So you will not take a breath or urine test.

Petitioner:   I ain't doing nothing, (indiscernible) an attorney.

Deputy:       I gave you the opportunity to do that now.

Petitioner:   It don't matter. (Indiscernible.)

Deputy:       What's that?  I – I'm giving you that opportunity now.

Petitioner:   (Indiscernible.)

Deputy:       Okay.  I'm giving you that opportunity again.  I'm reminding you –

Petitioner:   (Indiscernible.)

Deputy:       Under the Implied Consent statute –

Petitioner:   I have no idea what you're talkin' about.

Deputy:       Before making your decision about testing, you have the right to consult with an attorney.

Petitioner:   (Indiscernible.)

Deputy:       If you wish to do so, a telephone and directory will be made available to you.  If you are unable to contact an attorney, you must make your decision on your own.  You must make your decision within a reasonable amount of time.

Petitioner:   You're trying to (indiscernible) me of things (indiscernible.) I just want (indiscernible.)

| | |
|---|---|
| Deputy: | What's your reason; what's your reason for refusing the test? |
| Petitioner: | I – I ain't answerin' no questions. |
| Deputy: | You're not answering any more questions? |
| Petitioner: | (Indiscernible) questions. |
| Deputy: | You just want to go straight to your cell? |
| Petitioner: | Yes. |
| Deputy: | That will be end of this statement.  Time is 0151 hours. |

Respondent's Appendix Part III ("Appx. III"), Ex. 2 (Transcript of Meeker County District Court Hearings, Volume II), pp. 708-15 [Docket No. 32-2].

After the completion of the Implied Consent Advisory, the following conversation occurred:

| | |
|---|---|
| Petitioner: | (Indiscernible)  read  my  Miranda  rights.  (Indiscernible.) |
| Deputy: | So with that. |
| Petitioner: | I live in America. |
| Deputy: | With that I'm going to ask you, Corey, do you want to give me a Miranda statement about what occurred tonight? |
| Petitioner: | No.  I want lawyer. |
| Deputy: | Okay, so it's not worth my time to Mirandize you? |
| Petitioner: | I don't care (indiscernible.) |
| Deputy: | So you want me to Mirandize you? |
| Petitioner: | No, I want to go to my cell (indiscernible.)  I want to go to bed.  So I get some biscuits or something like that.  (Indiscernible.)  My dad just died (indiscernible.) |
| (Radio traffic) | |
| (Background talking) | |
| Petitioner: | Should have went to Tampa Bay, huh? |
| Deputy: | What's in Tampa Bay? |
| Petitioner: | Not this place. |
| Deputy: | Okay Corey, I just want to explain to you what you're being charged with. |
| Petitioner: | I ain't answering no more questions.  Talk to my lawyer tomorrow. |
| Deputy: | Okay, you don't want to hear your charges? |
| Petitioner: | No, I don't care. |
| Deputy: | You don't care about your charges? |

6

> Petitioner:   Don't care.  I'm tired.
> Deputy:        Okay.
> Petitioner:   (Indiscernible) go to bed.  (Indiscernible.)
> Deputy:        That's fine.  You refuse.

Appx. I, Ex. 1, p. 10.

Based upon this evidence, the Minnesota Court of Appeals made following findings of fact:

> Deputy Pedersen repeatedly attempted to administer the implied-consent advisory. Isaacson refused to take the test, asking the deputy to take him to his jail cell, telling the deputy that he was "confused" about his right to call an attorney, and stating that he "studied law for years" and that the deputy could not question him without violating his <u>Miranda</u> rights. Isaacson told Deputy Pedersen that he had just driven from Baltimore and had no idea what Deputy Pedersen was talking about, he did not know how to call an attorney, he would not answer any of Deputy Pedersen's questions, and he wanted to go straight to his cell.

<u>Isaacson I</u>, 2013 WL 4710650, at *1.

The State of Minnesota brought the following charges against Petitioner:  Felony DWI under Minn.Stat. § 169A.20, subd. 1(1) (Count 1); Felony refusal to submit to chemical testing under Minn.Stat. § 169A.20, subd. 2 (Count 2); Possession of an open container while in a vehicle under Minn.Stat. § 169A.35, subd. 3 (Count 3); Driving after revocation of driver's license under Minn.Stat. § 171.24, subd. 2 (Count 4); and Fleeing a peace officer in a motor vehicle under Minn.Stat. § 609.487, subd. 3 (Count 5). <u>Isaacson I</u>, 2013 WL 4710650, at *2; Appx. I, Ex. 1, p. 1.

On November 21, 2011, Petitioner appeared for an Omnibus hearing before Judge Kathryn Smith of the Meeker County District Court and asserted numerous challenges to the criminal charges against him.  Relevant to the instant habeas Petition, Petitioner moved to dismiss Count 2, the chemical test refusal charge, on the grounds

that Deputy Pedersen had failed to correct Petitioner's mistaken belief that he had a Fifth Amendment right to a <u>Miranda</u> warning in connection with the Implied Consent Advisory.  Appx. III, Ex. 1 (Transcript of Meeker County District Court Hearings, Volume I), pp. 24, 45-46 [Docket No. 32-1]; Appx. I, Ex. 1, p. 20.  Petitioner also contended that he was not afforded an opportunity for a private consultation with an attorney during the Implied Consent Advisory, due to the fact that Deputy Pedersen was attempting to tape record the phone call.[2]  Appx. III, Ex. 1, pp. 44-45; Appx. I, Ex. 1, p. 19.  The court took testimony from Deputy Pedersen, and Petitioner was permitted to cross-examine him.  Appx. III, Ex. 1, pp. 75-104.  However, because there was insufficient time for oral argument, the court continued the Omnibus hearing until a later date.  <u>Id.</u>, pp. 104-08.

On December 14, 2011, the Meeker County District Court held the continued Omnibus hearing, at which time Petitioner entered an <u>Alford</u> plea to Count 2, and the State agreed to dismiss the remaining charges.  <u>Id.</u>, pp. 109-27.  In support of his <u>Alford</u> plea, Petitioner admitted that on August 14, 2011, he was operating a motor vehicle in Meeker County and was stopped by a law enforcement officer.  <u>Id.</u>, p. 123.

On December 29, 2011, Petitioner withdrew his <u>Alford</u> plea and made an oral motion for Judge Smith to recuse herself on the grounds of bias.  Appx. III, Ex. 1, pp. 162, 169-71.  Judge Smith denied Petitioner's motion and advised him that his next step was to move for her recusal before the Honorable Steven Drange, Chief Judge of the Eighth Judicial District.  <u>Id.</u>, p. 171.

---

[2]  Petitioner raised these arguments in a Supplemental Motion or Brief to Suppress and Dismiss Count Two, submitted on January 24, 2011.  App. I, Ex. 1, p. 19 n. 4.  This submission is missing from the record.

On January 9, 2012, Petitioner appeared before Chief Judge Drange and moved the court for an order removing Judge Smith on grounds of bias.   Respondent's Appendix Part II ("Appx. II"), Ex. 10 (Transcript of Jan. 9, 2012 Proceedings before Hon. Steven E. Drange).   Chief Judge Drange denied Petitioner's motion on January 10, 2012.  Appx. III, Ex. 3 (January 10, 2012 Order of Chief Judge Steven Drange).  The court explained:

> In the present case, a review of the record does not show that Judge Smith was biased or prejudiced against Defendant, but only that her rulings were adverse to Defendant.  Contrary to Defendant's arguments, the record shows that she was patient with him and adequately took into consideration his arguments in rendering her rulings.

Id., p. 4.  Chief Judge Drange also found that Judge Smith was not required to recuse herself based on Petitioner's withdrawal of his Alford plea because Petitioner admitted no facts tending to disclose guilt as to any substantial element of Count 2.  Id., p. 3.

On February 6, 2012, Judge Smith issued an Omnibus Order denying Petitioner's motion to dismiss Count 2.  Appx. I, Ex. 1, pp. 12-13.  Although Petitioner was confused as to the applicability of Miranda in connection with the Implied Consent Advisory, Judge Smith found that Deputy Pedersen did not mislead Petitioner or cause his confusion.   Id., p. 11.   Judge Smith determined that Deputy Pedersen was not required to provide Petitioner with a Miranda warning prior to reading the Implied Consent Advisory, (citing South Dakota v. Neville, 459 U.S. 553, 564 (1983), along with several state cases), nor was Deputy Pedersen obligated to clear up Petitioner's confusion as to the "legalities" of the Implied Consent Advisory.  Id., pp. 12, 21-22 (other citations omitted).  The court also concluded that Deputy Pedersen was not required to give Petitioner an opportunity for a private phone consultation with counsel and, in any

event, Petitioner never requested one. Id., pp. 12, 19-20 (citing Campbell v. Comm'r of Pub. Safety, 494 N.W. 2d 268, 270 (Minn. 1992); State Dept. of Pub. Safety v. Held, 246 N.W.2d 863, 864 (Minn. 1976)).

Prior to trial, the State dismissed Count 3, the open-container charge. Isaacson I, 2013 WL 4710650, at *2; Appx. III, Ex. 1, pp. 380-81. In addition, the district court excluded all evidence showing that Petitioner's refusal to take a breath test resulted from his confusion. Isaacson I, 2013 WL 4710650, at *2; Appx. III, Ex. 1, pp. 372-73, 376-78, 434-37; Appx. III, Ex. 2, pp. 547-49. At the close of evidence, the district court denied Petitioner's motion for a reasonable-test-refusal jury instruction. Isaacson I, 2013 WL 4710650, at *2. A jury found Petitioner guilty on all counts. Id. Petitioner was sentenced to 60 months' imprisonment for felony DWI, with 270 days' jail credit; 72 months' imprisonment for DWI test refusal, with 270 days' jail credit, to run concurrently with the 60-month felony DWI sentence; 12 months and one day of imprisonment for fleeing a peace officer; and 90 days' imprisonment for driving after license revocation, with 90 days' jail credit. Id.

On August 8, 2012, Petitioner appealed his conviction to the Minnesota Court of Appeals. Appx. I, Ex. 2 (February 28, 2013 Order of Minnesota Court of Appeals) [Docket No. 30-2]. In his primary appellate brief, Petitioner argued that the district court erred by denying his request for a reasonable-test-refusal jury instruction and limiting his ability to question Deputy Pedersen regarding facts supporting a reasonable-test-refusal defense. Appx. I, Ex. 3 (Appellant's Brief in Minnesota Court of Appeals), pp. 12-18 [Docket No. 30-3]. Petitioner also contended that the district court had misstated the legal standard as to when an arrest was lawful when instructing the jury on the

elements of the chemical-test-refusal charge.  Id., pp. 19-24.  Additionally, Petitioner submitted that the evidence presented at trial was insufficient to convict him of felony DWI and that the district court erred at sentencing by assigning him one-half of a felony point for a prior Wisconsin conviction.  Id., pp. 25-33.

Petitioner also filed a 73-page Pro Se Supplemental Brief in connection with his direct appeal, in which he argued that in violation of the Sixth, Eighth, Ninth and Fourteenth Amendments to the United States Constitution, the trial court erred by denying his motion to dismiss Count 2, as he was "inhibited" from consulting with an attorney due to Deputy Pedersen's attempt to tape record the phone call.  Appx. I, Ex. 5 (Appellant's Pro Se Supplemental Brief in Minnesota Court of Appeals), pp. 10-34 [Docket No. 30-5].  Petitioner further maintained that consistent with due process rights afforded by the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, the trial court should have dismissed Count 2 because Deputy Pedersen never corrected or disavowed Petitioner's mistaken belief that he had a right to a Miranda warning prior to the Implied Consent Advisory.  Id., pp. 35-48, 65-72.  Lastly, Petitioner contended that the district court was biased and abused its discretion.  Id., pp. 49-55.  Petitioner alleged that Judge Smith interrupted him during oral argument at the Omnibus hearing, stated that she had already read his written submission, and promised that she would look at it again; however, her Omnibus order "did not even mention, consider or even comment on the arguments listed in the [Petitioner's] omnibus motion in regards to the deputy making confusing and misleading statements that were in the transcripts attached to the motion, that were from the audio recording of the implied consent advisory reading."  Id., pp. 54-55.

On September 3, 2013, the Minnesota Court of Appeals affirmed Petitioner's convictions.  Isaacson I, 2013 WL 4710650, at *1.  The bulk of the opinion addressed the issues raised in Petitioner's primary appellate brief – denial of his request for a jury instruction on the affirmative defense of reasonable test refusal in a criminal case; denial of his request to question Deputy Pedersen about facts that would have supported Petitioner's reasonable-refusal defense; the propriety of the trial court's test refusal instruction; the sufficiency of the evidence used to convict him; and the sentencing by the district court.  Id., at *2-8.  Regarding Petitioner's pro se arguments, the appellate court indicated that it had "carefully considered all of Isaacson's pro se arguments and conclude[d] that none of them ha[d] merit."  Id., at *8.

On October 3, 2013, Petitioner's appellate counsel filed a petition for review of Isaacson I in the Minnesota Supreme Court, arguing that his conviction should be vacated and the case remanded for further consideration in light of Missouri v. McNeely, 133 S. Ct. 1552 (2013), which held that the natural metabolization of alcohol in the bloodstream does not create a per se exigency justifying an exception to the warrant requirement.  Appx. I, Ex. 10 (Petition for Review of Decision of Court of Appeals), pp. 6-7 [Docket No. 30-10].  Petitioner also contended that the Minnesota Supreme Court should grant review to determine whether a reasonable-test-refusal defense is available when a defendant is charged with criminal refusal to submit to chemical testing under Minn. Stat. § 169A.20, subd. 2.  Id., pp. 7-8.  Finally, Petitioner requested that the court grant his petition to determine the proper scope of review of foreign convictions under the amended Minnesota Sentencing Guidelines.  Id., pp. 9-10.

On the same date, Petitioner filed a motion requesting that the Minnesota Supreme Court accept his pro se supplemental petition for review, which was attached to the motion. Appx. I, Ex. 10, Attach. D (Petitioner's Motion for Acceptance of Pro Se Petition for Review) [Docket No. 30-10]. In his supplemental petition for review in the Minnesota Supreme Court, Petitioner noted that he had filed a pro se supplemental brief with the Minnesota Court of Appeals and requested that he be allowed to petition for review in the Minnesota Supreme Court "to assure that [his] rights to a fair trial per the 5th, 6th, 8th, 9th and 14th amends. to the U.S. Const. were not violated, and to further allow exhaustion of all available state remedies for federal habeas corpus relief." Appx. I, Ex. 10, Attach. D (Appellant's Pro Se Supplemental Petition for Review in the Minnesota Supreme Court), p. 1. Petitioner argued that he was inhibited from consulting with an attorney during the Implied Consent Advisory because Deputy Pedersen remained in "ear shot" distance of Petitioner and was attempting to tape record the phone call. Id., pp. 2-4. Petitioner further maintained that the district court erred by ruling that Deputy Pedersen had no legal duty to dispel Petitioner's mistaken belief regarding the applicability of Miranda to the Implied Consent Advisory. Id., pp. 4-8. Petitioner also alleged that the trial court was biased and improperly gave him legal advice during the Omnibus hearing. Id., pp. 8-9.

On October 8, 2013, Karen Andrews, Assistant Minnesota Attorney General, submitted a letter to the Minnesota Supreme Court indicating that the State would not be filing a response to Petitioner's pro se supplemental petitioner for review. Appendix B in Support of Reply Brief and Memorandum, Ex. 8 (October 8, 2013 Letter from Karen Andrews to AnnMarie S. O'Neill) [Docket No. 42].

On October 10, 2013, the Minnesota Supreme Court denied Petitioner's motion to accept his pro se supplemental petition for review. Appx. I, Ex. 11 (October 10, 2013 Order of Minnesota Supreme Court) [Docket No. 30-11]. No reasons were given for denial of the motion. Id.

On November 12, 2013, the Minnesota Supreme Court granted the petition for review submitted by Petitioner's appellate counsel and remanded the case to the Minnesota Court of Appeals for consideration of Petitioner's challenge to Minnesota's criminal test-refusal statute in light of McNeely. Appx. I, Ex. 12 (November 12, 2013 Order of Minnesota Supreme Court) [Docket No. 30-12]. The court denied review of all other issues. Id.

On December 2, 2013, the Minnesota Court of Appeals reinstated Petitioner's appeal and ordered supplemental briefing on the issue of the legality of the criminal test-refusal statute under McNeely. Appx. I, Ex. 13 (December 2, 2013 Order of Minnesota Court of Appeals) [Docket No. 30-13]. In his supplemental appellate brief submitted by counsel, Petitioner argued that his conviction for chemical test refusal must be reversed because the criminal test-refusal statute was unconstitutional under McNeely.[3] Appx. I, Ex. 14 (Appellant's Supplemental Brief in Minnesota Court of Appeals), pp. 9-17 [Docket No. 30-14].

---

[3] On January 12, 2014, Petitioner filed a pro se supplemental brief in the Minnesota Court of Appeals, accompanied by a motion to accept it. Appx. I, Ex. 15 (Appellant's Pro Se Supplemental Brief in Minnesota Court of Appeals with Motion to Accept) [Docket No. 30-15]. On February 4, 2014, the Minnesota Court of Appeals denied Petitioner's motion to accept his pro se supplemental brief and reply. Appx. I, Ex. 19 (February 4, 2014 Order of Minnesota Court of Appeals) [Docket No. 30-19]. On March 20, 2014, Petitioner filed a Petition for Writ of Mandamus in the Minnesota Supreme Court. Appx. II, Ex. 2 (Petition for Writ of Mandamus) [Docket No. 31-2]. The Petition was accompanied by a letter addressed to the Commissioner of the Minnesota

On March 31, 2014, the Minnesota Court of Appeals issued an opinion affirming Petitioner's conviction. State v. Isaacson, 2014 WL 1271762, at *1 (Minn. Ct. App. Mar. 31, 2014) ("Isaacson II"). Relying on its previous decision in State v. Bernard, 844 N.W.2d 41 (Minn. Ct. App. 2014), the court held that, because law enforcement officers had probable cause to believe that Petitioner was driving while impaired, the search of Petitioner's breath was reasonable and did not implicate any fundamental due-process rights. Id. at *3-4. Accordingly, the court "decline[d] to determine [Petitioner's] argument that the criminal test-refusal statute 'places an unconstitutional condition on the citizen's license.'" Id. at *4.

On April 30, 2014, Petitioner's appellate counsel filed a petition for review of Isaacson II in the Minnesota Supreme Court. Appx. II, Ex. 6 (Petition for Review of Minnesota Court of Appeals Decision filed March 31, 2014) [Docket No. 31-6]. Petitioner contended that the Minnesota Supreme Court should grant review to determine whether the Minnesota Implied Consent statute was consistent with the Fourth Amendment to the United States Constitution as set forth in Camara v. Municipal

---

Supreme Court, in which Petitioner indicated that he was seeking emergency review under Rule 121.01 of the Minnesota Rules of Civil Appellate Procedure. Id. In the Petition, Petitioner challenged the Minnesota Court of Appeals' denial of his motion to accept his pro se supplemental and reply briefs, arguing that the court had violated the Minnesota Rules of Criminal Procedure and had failed to remain impartial. Id. On March 27, 2014, the Commissioner sent a letter to Petitioner stating that she was returning his Petition for Writ of Mandamus without filing. Appx. II, Ex. 3 (March 27, 2014 Letter from Rita Coyle Demeules to Corey Isaacson) [Docket No. 31-3]. The Commissioner explained that if Petitioner was seeking to challenge the order of the Minnesota Court of Appeals filed on February 5, 2014, then the proper remedy was to seek review of that decision before the Minnesota Supreme Court under Rule 29.04 of the Minnesota Rules of Criminal Procedure, which provided that a petition for review must be filed within 30 days of the date of the order challenged. Id. Because this remedy was open to Petitioner, the Commissioner indicated that the extraordinary writ procedures were not available. Id.

Court, 387 U.S. 523, 532-33 (1967), and See v. City of Seattle, 387 U.S. 541 (1967). Id., p. 7.  Petitioner further submitted that his case raised the "possible issue that the statute may 'impermissibly shift the burden of proof to the defendant.'"  Id., p. 9 (quoting State v. Myers, 711 N.W.2d 113 (Minn. Ct. App. 2006)).

Petitioner also submitted his own pro se petition for review of Isaacson II in the Minnesota Supreme Court.  Appx. II, Ex. 6, Attach. C (Pro Se Petition for Review of Minnesota Court of Appeals Decision dated March 31, 2014) [Docket No. 31-6]. Petitioner argued that the court should grant review because the Minnesota Court of Appeals failed to remain impartial in deciding his case.  Id., pp. 1-2.  Petitioner additionally maintained that pursuant to Camara, McNeely, and the Fourth, Fifth, Sixth, Ninth and Fourteenth Amendments to the United States Constitution, he could not be convicted of a felony under Minn. Stat. § 169A.20, subd. 2, for refusing to consent to a search of his blood, breath or urine.  Id., pp. 2-3.  Petitioner further contended that the State unconstitutionally attempted to shift the burden of proof to Petitioner to disprove a material element of the DWI offense, in violation of the Fifth, Sixth, Eighth, Ninth and Fourteenth Amendments.  Id., pp. 3-4 (citing Patterson v. New York, 432 U.S. 197, 206 (1977); Moran v. Ohio, 469 U.S. 948 (1984)).  Petitioner also argued that the Minnesota Court of Appeals impermissibly acted as advocate for the State and raised arguments not advanced by the parties.  Id., pp. 4-6.  Last of all, Petitioner asserted that the Implied Consent Advisory did not inform him that refusal to take a blood, breath or urine test was a seven-year felony, and therefore, his conviction "shocks the conscience" in violation of his substantive due process rights under the Fifth, Eighth, Ninth and Fourteenth Amendments.  Id., p. 6.

On May 8, 2014, the State filed a letter stating that it would not be submitting a response to the petition for review submitted by Petitioner's appellate counsel.  Appx. II, Ex. 7 (May 8, 2014 Letter from Karen Andrews to AnnMarie O'Neill) [Docket No. 31-7]. However, the State objected to Petitioner's pro se petition for review on the grounds that it was not accompanied by a motion to accept, and the petition exceeded the 10-page limit set forth in Minn. R. Crim. P. 29.04, subd. 3 (2014).  Id.

On May 27, 2014, the Minnesota Supreme Court issued an order striking from the record Petitioner's pro se petition for review.  Appx. II, Ex. 8 (May 27, 2014 Order of Minnesota Supreme Court) [Docket No. 31-8].  The court explained that Rule 29.04 of the Minnesota Rules of Criminal Procedure did not provide for the filing of a pro se supplemental petition for review.  Id.

On June 17, 2014, the Minnesota Supreme Court stayed Petitioner's petition for review pending final disposition in State v. Bernard, Case No. A13-1245.  Appx II, Ex. 9 (June 17, 2014 Order of Minnesota Supreme Court) [Docket No. 31-9].

On December 15, 2014, Petitioner filed the instant Amended Petition for Writ of Habeas Corpus,[4] in which he asserted one ground for relief made up of three claims.[5] First, Petitioner argued that, in violation of his rights to due process under the Fifth, Sixth, Eighth, Ninth and Fourteenth Amendments of the United States Constitution, he was "entrapped" or "unfairly tricked" into committing the crime of chemical test refusal because Deputy Pedersen gave "misleading implicit assurances" regarding his right to

---

[4]     Petitioner filed his original habeas Petition on October 31, 2014, with an Appendix, Brief and Memorandum.  See Docket Nos. 1-3.

[5]     Instead of listing the grounds for relief in his Amended Petition, Petitioner referred the Court to his Amended Brief and Memorandum.  Amended Petition, p. 33.

remain silent during the Implied Consent Advisory.  Amended Brief and Memorandum in Support of Petition Under 28 U.S.C. 2254 for Writ of Habeas Corpus by a Person in State Custody ("Pet.'s Mem."), pp. 2-3, 5, 6-14, 16-22, 23-24, 25-27 [Docket No. 26]. According to Petitioner, the government was not permitted to mislead citizens as to the consequences of attempting to remain silent during the Implied Consent Advisory.  Id., p. 6 (citing Neville, 459 U.S. at 553; Raley v. Ohio, 360 U.S. 423 (1959)).  Petitioner further submitted that the government had "a duty to make reasonable efforts to keep the citizen from pursuing an inaccurate interpretation of law to his detriment."  Id., p. 7 (citing Simmons v. United States, 348 U.S. 397, n. 5 (1955)).  Petitioner asserted that the improper application or administration of Miranda warnings can mislead citizens to the point of entrapment, which violates principles of due process.  Id. (citing Missouri v. Seibert, 542 U.S. 600 (2004); United States v. Mandujano, 425 U.S. 564 (1976)).

Second, Petitioner maintained that, in violation of the Fifth and Sixth Amendments to the United States Constitution, he was inhibited from consulting with an attorney during administration of the Implied Consent Advisory because Deputy Pedersen was attempting to record the attorney phone call with a handheld tape recorder.  Id., pp. 3-5, 14-16, 17, 19, 22-23, 24-25 (citing Upjohn Co. v. United States, 449 U.S. 383, 389, 394 (1981); United States v. Boruff, 909 F.2d 111 (5th Cir. 1990); Campbell, 494 N.W. 2d at 268).

Third, Petitioner alleged that the Meeker County District Court and the Minnesota Court of Appeals were biased and failed to remain impartial in their rulings in his case. Id., pp. 2-4, 28-38.  Petitioner argued that the district court improperly influenced him not to raise certain arguments during the Omnibus hearing, and promised to review

Petitioner's written submission, but did not specifically rule on the issues he raised. Id., pp. 2-4, 28-31, 33-36. Petitioner contended that the bias of the Minnesota Court of Appeals was evident by its failure to address his pro se arguments in an attempt to "cover up" misconduct by the district court and the police. Id., pp. 3-5, 31-32, 36-38.

For relief, Petitioner requested that this Court reverse his convictions and remand the case to the Meeker County District Court for a new trial. Id., pp. 5-6. Petitioner also requested an Order dismissing Count 2 and excluding all evidence of chemical test refusal from the new trial. Id., p. 6.

In opposition, Respondent argued that the Minnesota Court of Appeals did not act contrary to or unreasonably apply United States Supreme Court law when it upheld the trial court's decision not to dismiss or exclude evidence relevant to the chemical test refusal charge based on Petitioner's claim that he was confused or had a mistaken believe that he had a Miranda right during the Implied Consent Advisory. Respondent's Memorandum in Support of Answer to § 2254 Petition, pp. 16-26 [Docket No. 29]. According to Respondent, Deputy Pedersen's request to undergo blood-alcohol testing did not constitute an interrogation, and like a request by police that an arrestee submit to fingerprinting or photographing, a Miranda warning was not required. Id., p. 16-17 (citing Neville, 459 U.S. at 564 n. 15). Further, Respondent contended that the use of evidence of Petitioner's refusal to submit to chemical testing did not violate his Fifth Amendment right against self-incrimination, and the failure to warn Petitioner that the results of chemical testing could be used against him did not deprive him of due process. Id., pp. 16-18 (citing Neville, 459 U.S. at 563, 564, 566; House v. Campion, No. CIV 08-2917 (RHK/JJK), 2009 WL 1850874, at *6 n. 3, (D. Minn. June 25, 2009)

aff'd, 367 F. App'x 726 (8th Cir. 2010)).  Respondent submitted that Minnesota courts have properly applied Neville in holding that police need not give a Miranda warning prior to reading the Implied Consent Advisory, (citing State v. Gross, 335 N.W.2d 509, 510 (Minn. 1983)), and that the officer reading the advisory is not required to clear up any confusion on the driver's part regarding the legal consequences of test refusal.  Id., pp. 18-20 (citing Maietta v. Comm'r of Pub. Safety, 663 N.W.2d 595 (Minn. Ct. App. 2003); Friedman v. Commissioner of Public Safety, 473 N.W.2d 828, 833 (Minn. 1991) (stating that an attorney, not a police officer, is the appropriate source of legal advice, since an attorney functions as an objective advisor who could explain the alternative choices)).  Additionally, Respondent maintained that Raley did not apply to the instant case because Deputy Pedersen did not affirmatively mislead Petitioner by giving him a Miranda warning prior to reading the Implied Consent Advisory.  Id., pp. 20-22.

Respondent also asserted that the Minnesota Court of Appeals did not make an unreasonable determination of the facts in light of the evidence presented in the state court proceedings when it affirmed the trial court's rejection of Petitioner's claim that Deputy Pedersen inhibited him from calling an attorney.  Id., pp. 26-32.  Respondent contended that Deputy Pedersen did not intentionally interfere with Petitioner's right to counsel, and, in any event, Petitioner failed to demonstrate prejudice because a recording of an attorney-client phone call would have been inadmissible at trial under Minnesota law.  Id., pp. 27-31 (citing State v. Schmidt, 712 N.W.2d 530, 538 (Minn. 2006); Campbell, 494 N.W.2d at 269-70; Held, 246 N.W.2d at 863-64).

Additionally, Respondent contended that neither the Minnesota District Court nor the Minnesota Court of Appeals was biased in deciding Petitioner's case.  Id., pp. 32-35.

In Respondent's view, Petitioner's allegations of bias were based purely on adverse rulings, which do not constitute a valid basis to challenge a judge's impartiality.  Id., pp. 33-34 (citing Liteky v. United States, 510 U.S. 540, 555-56, 583 (1966)).  Respondent posited that the trial and appellate courts specifically addressed whether Petitioner was misled as to the applicability of Miranda and whether he was inhibited from calling an attorney.  Id., pp. 34-35.

Finally, Respondent argued that Petitioner had procedurally defaulted on every claim raised in the Petition, apparently on grounds that the Minnesota Supreme Court denied his motion to file the pro se petition for review.  Id., pp. 24-26, 31, 36.  According to Respondent, filing a supplemental pro se petition for review violates Minn. R. Crim. P. 29.04.[6]  Respondent's Answer to § 2254 Petition [Docket No. 28].

In reply, Petitioner urged that he gave the Minnesota Supreme Court a "fair opportunity" to consider his pro se claims and did not attempt to bypass the court's rules in seeking discretionary review.  Reply Brief and Memorandum ("Pet's. Reply"), pp. 2-6, 7-8 [Docket No. 41] (citing O'Sullivan v. Boerckel, 526 U.S. 838, 844-45, 847-48 (1999)).  Petitioner contended that the Minnesota Supreme Court never made a "plain statement" that he had violated any procedural rule, and thus, because the state court

_____

[6]  Respondent did not indicate which section of Minn. R. Crim. P. 29.04 was violated.  The Court notes that Rule 29.04 states that the "petition for review must not exceed 10 pages, exclusive of the addendum, and must identify the petitioner, state that petitioner is seeking permission to appeal to the Supreme Court from the Court of Appeals,"  Minn. R. Crim. P. 29.04, subd. 3.  As the Petition for Review filed by Petitioner's appellant counsel was already 10 pages in length, (see Appx. I, Ex. 10 [Docket No. 30-10]), perhaps this is the reason Petitioner's motion was denied by Chief Justice Lorie Gildea.  Or perhaps, it was denied for the same reason Chief Justice Gildea rejected a similar request by Petitioner to grant review of his pro se supplemental petition for review of Isaacson II: "The applicable rules do not provide for the filing of a pro se supplemental petition for review.  See Minn. R. Crim. Proc. 29.04."  Appx. II, Ex. 8 (May 27, 2014 Order of Minnesota Supreme Court) [Docket No. 31-8].

had discretion to review the merits of his pro se arguments, it simply chose not do so. Id., pp. 6-7, 9-11 (citing Harris v. Reed, 489 U.S. 255, 263-66 (1989)).  Petitioner also asserted that Respondent could not raise an affirmative defense of procedural default for the first time on federal habeas review, as Respondent had waived its right to do so when it notified the Minnesota Supreme Court that it was not filing a response to the petition for review.  Id., pp. 11-13 (citing Pet.'s Reply, Appendix B, Ex. 8 (October 8, 2013 letter from Minnesota Assistant Attorney General Karen Andrews to Clerk of Appellate Courts)).    In addition, Petitioner maintained that because he had demonstrated "actual innocence" of the crime of chemical test refusal, he could overcome any state procedural default, and therefore, this Court must order a dismissal of the offense.  Id., pp. 14-16 (citing Schlup v. Delo, 513 U.S. 298 (1995)).

Petitioner further contended that this Court should extend the legal principles of Raley and Neville to the instant habeas Petition and deem that the Minnesota court rulings were an unreasonable application of those cases.  Id., pp. 16-19.  Petitioner took issue with Respondent's characterization of the facts and interpretation of case law in its response, arguing that Respondent never legally challenged or disproved the "fact" that he was misled as to the applicability of Miranda.  Id., pp. 22-36.  Petitioner devoted the balance of his reply to reiterating his argument that the state courts ignored his claims at the Omnibus hearing and on direct appeal.  Id., pp. 37-44.

On February 11, 2015, the Minnesota Supreme Court issued its opinion in State v. Bernard, 859 N.W.2d 762, 764 (Minn. 2015).  On April 14, 2015, the Minnesota Supreme Court denied review of the Petition for Review of Isaacson II.  April 14, 2015 Order   of   Minnesota   Supreme   Court,   Case   No.   A12-1395   (available   at

http://macsnc.courts.state.mn.us/ctrack/view/publicCaseMaintenance.do?csNameID=73

813&csInstanceID=87254).

On July 10, 2015, Petitioner filed a petition for writ of certiorari in the United

States Supreme Court.    Isaacson v. Minnesota,   Case No. 15-5315,

http://www.supremecourt.gov/search.aspx?filename=/docketfiles/15-5315.htm.   As of

the date of this Report and Recommendation, that petition is pending.[7]

## II.   DISCUSSION

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs a

federal court's review of habeas corpus petitions filed by state prisoners.   AEDPA

provides that a district court may entertain a habeas petition submitted by a state

prisoner "only on the ground that he is in custody in violation of the Constitution or laws

or treaties of the United States."   28 U.S.C. § 2254(a).

Section 2254 provides that a habeas corpus petition

> shall not be granted with respect to any claim that was
> adjudicated on the merits in State court proceedings unless
> the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law,
> as determined by the Supreme Court of the United States;
> or
>
> (2) resulted in a decision that was based on an
> unreasonable determination of the facts in light of the
> evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The Eighth Circuit described review under § 2254(d)(1) as follows:

---

[7]   On December 11, 2015, the United States Supreme Court granted Bernard's
petition for writ of certiorari.   Bernard v. Minnesota, No. 14-1470, 2015 WL 8486654, at
*1 (U.S. Dec. 11, 2015).

> A decision is "contrary to" federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law' or if it 'confront[ed] facts that are materially indistinguishable from a relevant Supreme Court precedent" but arrived at an opposite result. Williams v. Taylor, 529 U.S. 362, 405, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A state court "unreasonably applies" federal law when it "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," or "unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Id. at 407.
>
> A federal court may not issue the writ simply because it "concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411.

Engesser v. Dooley, 457 F.3d 731, 735-36 (8th Cir. 2006), cert. denied, 549 U.S. 1223 (2007). Under this standard, federal courts "must deny a writ—even if [they] disagree with the state court's decision—so long as that decision is reasonable in view of all the circumstances." May v. Iowa, 251 F.3d 713, 716 (8th Cir. 2001) (citing Williams, 529 U.S. at 409-13).

By its terms, §2254(d)(1) "limits the benchmark precedent against which a habeas court may measure a state court decision . . . ." O'Brien v. Dubois, 145 F.3d 16, 20 (1st Cir. 1999), overruled on other grounds by McCambridge v. Hall, 303 F.3d 24 (1st Cir. 2002); see also Lo v. Comm'r of Corr. of Minn., Civ. No. 07-4602 (JRT/JSM), 2009 WL 102683, at *5 (D. Minn. Jan. 14 2009) (same). Even if lower federal court decisions support a petitioner's position, "the writ cannot issue unless the state court decision contravenes, or involves an unreasonable application of, extant Supreme Court jurisprudence." O'Brien, 145 F.3d at 20 (citations omitted).

24

Nevertheless, "[t]o the extent that 'inferior' federal courts have decided factually similar cases, reference to those decisions is appropriate in assessing the reasonableness of the state court's resolution of the disputed issue." Atley v. Ault, 191 F.3d 865, 872 (8th Cir. 1999) (citing O'Brien, 145 F.3d at 25); see also Engesser, 457 F.3d at 736-37 (same).

Under §2254(d)(2), a state court decision involves "an unreasonable determination of the facts in light of the evidence presented in state court proceedings," only if it is shown that the state court's presumptively correct factual findings are not supported by the record. 28 U.S.C. § 2254(e)(1). Pursuant to § 2254(e)(1):

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1); see also Lee v. Gammon, 222 F.3d 441, 442 (8th Cir. 2000).

## A.   Exhaustion and Procedural Default

It is well established that a federal court cannot entertain a petition for a writ of habeas corpus on behalf of a state prisoner unless the prisoner has first exhausted all available state-court remedies as to each of his claims. 28 U.S.C. § 2254(b)(1)(A) ("An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State"); O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999); Rose v. Lundy, 455 U.S. 509 (1982). A federal claim is deemed to be unexhausted if the claim has not been fairly presented in one complete round of the state's established appellate review process. O'Sullivan,

526 U.S. at 845.   However, the petitioner still has a right to raise the claim by any available state procedure.   See 28 U.S.C. § 2254(c).   This requirement is based on principles of comity and federalism; its purpose is to ensure that state courts are given the first opportunity to correct alleged federal constitutional errors raised by state prisoners.   O'Sullivan, 526 U.S. at 842; Duncan v. Henry, 513 U.S. 364, 365-66 (1995) (per curiam); Smittie v. Lockhart, 843 F.2d 295, 298 (8th Cir. 1988).

"To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim."   Baldwin v. Reese, 541 U.S. 27, 29 (2004) (citations omitted); see also Turnage v. Fabian, 606 F.3d 933, 936 (8th Cir. 2010) ("The onus rests on the prisoner to present the substance of his federal claims 'in each appropriate state court (including a state supreme court with powers of discretionary review).'") (quoting Baldwin, 541 U.S. at 29).

Generally, "[w]hen a state court remedy is available for a state prisoner's unexhausted claim, the federal habeas court must defer action until the claim is exhausted, either by dismissing the federal petition without prejudice or by using the 'stay and abeyance' procedure described in Rhines v. Weber, [544 U.S. 269] (2005)." Armstrong v. Iowa, 418 F.3d 924, 926 (8th Cir. 2005), cert. denied, 546 U.S. 1179 (2006).   However, when a prisoner has not exhausted his state court remedies for a particular claim, and state procedural rules preclude any further consideration of that claim, then the claim has been procedurally defaulted.   Coleman v. Thompson, 501 U.S. 722, 750 (1991); see also O'Sullivan, 526 U.S. at 848 (holding that petitioner's

26

failure to timely present federal claims to the state high court resulted in a procedural default); Turnage, 606 F.3d at 936 ("If a prisoner fails to present his federal claims to the state courts, those claims are generally considered procedurally defaulted.") (quoting Barrett v. Acevedo, 169 F.3d 1155, 1161 (8th Cir.) (en banc), cert. denied, 528 U.S. 846 (1999)).  In other words, if there is still a state court remedy available, a previously unraised habeas claim is "unexhausted," but if there is no state court remedy still available, then the claim is "procedurally defaulted."  See Armstrong, 418 F.3d at 926 ("[I]f no state court remedy is available for the unexhausted claim – that is, if resort to the state courts would be futile  – then the exhaustion requirement in § 2254(b) is satisfied, but the failure to exhaust 'provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim. . . .'") (quoting Gray v. Netherland, 518 U.S. 152, 162 (1996)); see also Middleton v. Roper, 455 F.3d 838, 855 (8th Cir. 2006), cert. denied, 549 U.S. 1134 (2007) ("'If a prisoner has not presented his habeas claims to the state court, the claims are defaulted if a state procedural rule precludes him from raising the issues now.'") (quoting Abdullah v. Groose, 75 F.3d 408, 411 (8th Cir.) (en banc), cert. denied, 517 U.S. 1215 (1996)).

A claim that has been procedurally defaulted will not be addressed on the merits unless the petitioner has shown "cause and prejudice" to excuse his procedural default, or, in the alternative, that a "fundamental miscarriage of justice" would result if the federal court declined to consider the claim.  Coleman, 501 U.S. at 750; see also Clemons v. Luebbers, 381 F.3d 744, 750 (8th Cir. 2004) ("A federal district court is precluded from substantively considering a habeas corpus claim that a state court has

disposed of on independent and adequate non-federal grounds, including state procedural grounds.") (citation omitted).

"'Cause' . . . must be something <u>external</u> to the petitioner, something that cannot fairly be attributed to him. . . . For example, 'a showing that the factual or legal basis for a claim was not reasonably available to counsel . . . or that 'some interference by officials' . . . made compliance impracticable . . . .'" <u>Coleman</u>, 501 U.S. at 753 (emphasis in original) (quoting <u>Murray v. Carrier</u>, 477 U.S. 478, 488). "Prejudice" that will overcome a procedural default requires a showing by a petitioner "not merely that the errors at his trial created a <u>possibility</u> of prejudice, but that they worked to his <u>actual</u> and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." <u>Armstrong v. Kemna</u>, 590 F.3d 592, 606 (8th Cir. 2010) (emphasis in original) (quoting <u>United States v. Frady</u>, 456 U.S. 152, 170 (1982), <u>cert. denied</u>, 560 U.S. 945 (2010)). A court need not determine the "cause" issue if it first determines that the petitioner has not made a showing of prejudice. <u>Id.</u> at 606 n. 12.

The "fundamental miscarriage of justice" exception is available only upon a "showing, based on new evidence, that 'a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" <u>Brownlow v. Groose</u>, 66 F.3d 997, 999 (8th Cir. 1995) (quoting <u>Schlup v. Delo</u>, 513 U.S. 298, 327 (1995)), <u>cert. denied</u>, 516 U.S. 1161 (1996). In other words, a petitioner cannot simply point to errors that allegedly occurred during the course of his state criminal proceeding; he must instead

offer some new evidence which affirmatively demonstrates that he is, in fact, innocent of the crime for which he was convicted.[8]

If a petitioner is unable to show cause and prejudice, or a fundamental miscarriage of justice, the procedural default cannot be excused, and the court will deny the claim without addressing its merits.  See Carney v. Fabian, 441 F. Supp. 2d 1014, 1029 (D. Minn. 2006).

The initial question the Court must address is whether, as Respondent argued, Petitioner has procedurally defaulted on all of his claims because the Minnesota Supreme Court denied his motion to accept his pro se petition for review of Isaacson I.

Generally, "'[a] procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar.'" Nicklasson v. Roper, 491 F.3d 830, 839 (8th Cir. 2007) (quoting Harris, 489 U.S. at 263).  Further "when a state appellate court affirms a lower court decision without

---

8          The actual innocence exception is concerned with claims of actual, not legal innocence.  It is evidence of factual innocence coupled with a constitutional violation which triggers the actual innocence exception.  Indeed, a credible claim of actual innocence requires [a] petitioner to support his allegation of constitutional error with new reliable evidence . . . .  Examples of evidence which may establish factual innocence include credible declarations of guilt by another, trustworthy eyewitness accounts, and exculpatory scientific evidence.

Pitts v. Norris, 85 F.3d 348, 350-51 (8th Cir.) (internal citations and marks omitted), cert. denied, 519 U.S. 972 (1996).  For purposes of showing actual innocence, "'evidence is new only if it was not available at trial and could not have been discovered earlier through the exercise of due diligence.'" Johnson v. Norris, 170 F.3d 816, 817 (8th Cir. 1999) (quoting Armine v. Bowersox, 128 F.3d 1222, 1230 (8th Cir. 1997) (en banc), cert. denied, 523 U.S. 1123 (1998)).

reasoning, we 'look through' the silent opinion and apply AEDPA review to the 'last reasoned decision' of the state courts." Worthington v. Roper, 631 F.3d 487, 497 (8th Cir. 2011) (citations omitted).   Thus, "[w]here there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground.   If an earlier opinion 'fairly appear[s] to rest primarily upon federal law,' we will presume that no procedural default has been invoked by a subsequent unexplained order that leaves the judgment or its consequences in place." Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991) (internal citation omitted).

In this case, when Petitioner filed with the Minnesota Supreme Court his motion to accept his pro se petition for review of Isaacson I, he attached the petition for consideration, which raised federal constitutional claims. See Appx. I, Ex. 10, Attach. D. The Minnesota Supreme Court summarily denied Petitioner's motion, with no explanation or citation in support of its decision. See Appx. I, Ex. 11.   Lacking any insight into the basis for Minnesota Supreme Court's decision to deny Petitioner's motion to accept his pro se petition for review, this Court cannot conclude with certainty that the denial was on state procedural grounds or for some other reason.   Further, "[a]lthough the procedural bar issue should ordinarily be resolved first, judicial economy sometimes dictates reaching the merits if the merits are easily resolvable against a petitioner while the procedural bar issues are complicated." Barrett, 169 F.3d at 1162; see also 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."); Trussell v. Bowersox, 447 F.3d 588, 590

(8th Cir.) (confirming that procedural default is not a <u>jurisdictional</u> bar to review of a habeas claim, and addressing petitioner's apparently defaulted claim on the merits "in the interest of judicial economy"), <u>cert</u>. <u>denied</u>, 549 U.S. 1034 (2006); <u>Tokar v. Bowersox</u>, 198 F.3d 1039, 1049 (8th Cir. 1999) ("Since we find the issue can be easily resolved on the merits, we need not delve into all of [the petitioner's] excuses for his procedural default.") (citation omitted), <u>cert</u>. <u>denied</u>, 531 U.S. 886 (2000).  In sum, as our Court of Appeals has aptly observed, "[t]he simplest way to decide a case is often the best." <u>Chambers v. Bowersox</u>, 157 F.3d 560, 564, n. 4 (8th Cir. 1998), <u>cert. denied</u>, 527 U.S. 1029 (1999).

Thus, with the exception of Petitioner's claim that the Minnesota Court of Appeals was biased, the Court will proceed to address Petitioner's habeas corpus claims on the merits.

With respect to Petitioner's argument that the Minnesota Court of Appeals failed to remain impartial in deciding his direct appeal, the Court has no doubt that this claim was not exhausted.  This is because in both his primary petition for review and his pro se petition for review of <u>Isaacson I</u> in the Minnesota Supreme Court, Petitioner made no mention of the Court of Appeals' alleged bias.  Further, when he attempted to raise the issue of the bias of the Minnesota Court of Appeals in his pro se petition for review of <u>Isaacson II</u>, the Minnesota Supreme Court struck the petition on procedural grounds. Appx. II, Ex. 8 (Order stating that Minnesota Rule of Criminal Procedure 29.04 did not provide for the filing of a pro se supplemental petition for review).  As such, Petitioner's claim of bias by the Minnesota Court of Appeals was not fairly presented in each appropriate state court, and consequently, Petitioner has failed to exhaust this claim.  In

addition, the Court finds that Petitioner's claim that the Minnesota Court of Appeals was biased has been procedurally defaulted. Petitioner has already appealed his conviction to both the Minnesota Court of Appeals and the Minnesota Supreme Court and it is now too late for him to present this claim on direct review.

Further, Petitioner has forfeited his right to state collateral review via a petition for postconviction relief. Under Minnesota law, "[a] petition for postconviction relief after a direct appeal has been completed may not be based on grounds that could have been raised on direct appeal of the conviction or sentence." Minn. Stat. § 590.01 subd. 1. Additionally, "'when a petition for postconviction relief follows a direct appeal of a conviction, all claims raised in the direct appeal and all claims of which the defendant knew or should have known at the time of the direct appeal are procedurally barred.'" Hooper v. State, 838 N.W.2d 775, 787 (Minn. 2013) (quoting Buckingham v. State, 799 N.W.2d 229, 231 (Minn. 2011)); see also Maxwell v. Gau, Civ. No. 12-1770 (ADM/TNL), 2014 WL 1371912, at *10 (D. Minn. Apr. 8, 2014) ("The State of Minnesota has a well-established procedural rule that prevents state prisoners from seeking post-conviction relief based on claims that could have been raised in direct appeal.") (citing State v. Knaffla, 243 N.W.2d 737 (Minn. 1976)). Claims that are "known" include those available after trial that could have been raised on direct appeal. See Townsend v. State, 723 N.W.2d 14, 18 (Minn. 2006) (citation omitted). Since Petitioner could have presented his claim of appellate judicial bias to the Minnesota Supreme Court, but failed to do so, postconviction review of this claim is barred. Accordingly, Petitioner's claim that the Minnesota Court of Appeals was biased has been procedurally defaulted.

Finally, Petitioner's argument to the contrary, he has failed to present evidence of cause and prejudice, or a fundamental miscarriage of justice. Accordingly, the procedural default cannot be excused and this claim must be dismissed without consideration of its merits.

Having made the determination that Petitioner has not procedurally defaulted on any of his claims except for his contention of bias by the Minnesota Court of Appeals, this Court proceeds to consider the merits of the balance of his habeas petition.

## B.   Entrapment by Estoppel

Petitioner contended that, during the reading of the Implied Consent Advisory, Deputy Pedersen gave "misleading implicit assurances" as to the applicability of his Miranda rights and the consequences of attempting to remain silent. According to Petitioner, Deputy Pedersen entrapped or tricked him into committing the crime of chemical test refusal, in violation of his due process rights.

Prior to trial, the Meeker County District Court rejected Petitioner's entrapment argument and denied his motion to dismiss the chemical test refusal charge.[9] The court found that although Petitioner was confused as to the applicability of Miranda, "the deputy did not mislead the defendant or cause his confusion." Appx. I, Ex. 1, p. 11. Based on Neville, along with several state cases, the court further determined that

---

[9]     To determine whether a state court judgment was contrary to, or involved an unreasonable application of, clearly established Supreme Court law under 28 U.S.C. § 2254(d), a federal habeas court must review the last reasoned state court decision. Worthington, 631 F.3d at 497 ("[W]hen a state appellate court affirms a lower court decision without reasoning, we 'look through' the silent opinion and apply AEDPA review to the 'last reasoned decision' of the state courts.") (citations omitted). Here, because the Minnesota Court of Appeals and the Minnesota Supreme Court did not provide a reasoned explanation for rejecting Petitioner's claims, this Court applies AEDPA review to the decision of the Meeker County District Court.

Deputy Pedersen was not required to provide Petitioner with a <u>Miranda</u> warning prior to reading the Implied Consent Advisory, nor was he obligated to clear up Petitioner's confusion as to the "legalities" of the Implied Consent Advisory. <u>Id.</u>, pp. 12, 21-22 (other citations omitted). The court also determined that Deputy Pedersen was not required to inform Petitioner that <u>Miranda</u> rights were inapplicable to the Implied Consent Advisory. <u>Id.</u>, p. 22. In doing so, the court distinguished Petitioner's case from <u>State, Dep't of Highways v. Beckey</u>, 192 N.W.2d 441 (Minn. 1971), in which the Minnesota Supreme Court held:

> Where the interrogating officer undertakes to repeat Miranda warnings given by the arresting officer at the time of the arrest as well as to inform the person arrested of his rights and obligations under the implied-consent statute without at the same time making clear that his constitutional rights to counsel and to remain silent do not apply to the implied-consent statute, it is not unlikely that confusion will occur, resulting in the arrested person's being misled into believing that he may remain silent and that he is being offered the option to postpone his decision and the chemical test until he can consult an attorney. Where the responses of the arrested person upon being requested to submit to a chemical test indicate that he is asserting a right which he has just been told he is free to assert, it is incumbent upon the officer to make clear that he has no constitutional right to consult an attorney before deciding whether he will submit to a test but merely that, at the time the request is made, he has a right to choose between permitting the test or refusing the test at the risk of revocation of his driver's license.

Appx. I, Ex. 1, p. 21 (quoting <u>Beckey</u>, 192 N.W.2d at 445). The Meeker County District Court reasoned that because Petitioner was never given a <u>Miranda</u> warning in the first place, Deputy Pedersen had no duty to inform him that <u>Miranda</u> rights were inapplicable to the Implied Consent Advisory. <u>Id.</u>, pp. 21-22.

As an initial matter, the state court's finding that Deputy Pedersen did not mislead or confuse Petitioner as to his <u>Miranda</u> rights was not an unreasonable

determination of the facts in light of the evidence presented.[10]   Indeed, the transcript of

the Implied Consent Advisory reading indicates that Petitioner's confusion stemmed

from his own preexisting belief that he could invoke <u>Miranda</u> protections during the

Implied Consent Advisory.   Deputy Pedersen never gave Petitioner a <u>Miranda</u> warning

and never suggested that Petitioner could legally refuse to submit to chemical testing.

Rather, it was Petitioner, after asserting that he had "studied law," who first mentioned

<u>Miranda</u>.   Even though Deputy Pedersen repeatedly asked Petitioner whether he

wished to consult with an attorney (as he was required to do under Minn. Stat. §

169A.51, subd. 2), any confusion was caused by Petitioner's own mistaken belief that

<u>Miranda</u> protections were applicable to the Implied Consent Advisory.

Having found that the Meeker County District Court's decision was not based on

an unreasonable determination of the facts, this Court now addresses whether the state

court's decision was contrary to, or involved an unreasonable application of, clearly

established Supreme Court precedent.

"The defense of entrapment by estoppel only applies 'when an official assures a

defendant that certain conduct is legal, and the defendant reasonably relies on that

advice and continues or initiates the conduct.'"   <u>United States v. Benning</u>, 248 F.3d 772,

775 (8th Cir. 2001) (quoting <u>United States v. Achter</u>, 52 F.3d 753, 755 (8th Cir. 1995)),

---

[10]     While this Court has concluded that the state court's finding that Deputy
Pedersen did not mislead or confuse Petitioner was a "determination of a factual issue"
entitled to a presumption of correctness under 28 U.S.C. § 2254(e)(1), even if the state
court's finding rose to the level of a "mixed question[] of law and fact warranting
independent [de novo] review by the federal habeas court," <u>Thompson v. Keohane</u>, 516
U.S. 99, 106 (1995) (citation omitted), this Court agrees with the state court's finding.

cert. denied, 534 U.S. 922 (2001).[11]  To successfully present a defense of entrapment by estoppel, a defendant "bears the burden of proof to demonstrate that: (1) his reliance on the government's statement was reasonable, and (2) the statement misled him into believing his conduct was legal."  Id. (quoting Austin, 915 F.2d at 366).  "The 'government official must be guilty of affirmative misconduct in order for a defendant to put forth a viable defense of entrapment by estoppel.'"  United States v. Alcorn, 638 F.3d 819, 823 (8th Cir. 2011) (quoting Benning, 248 F.3d at 775).

In Raley, the four appellants had been convicted of contempt for refusal to answer certain questions posed to them by the Un-American Activities Commission of the State of Ohio.  360 U.S. at 424.  The appellants had been told by the Chairman of the Commission that they could refuse to answer questions pursuant to the privilege against self-incrimination under the Federal and Ohio Constitutions.  Id. at 426-31.  The Ohio Supreme Court affirmed the appellants' convictions, holding that the privilege against self-incrimination was not available because a state statute automatically granted immunity from state prosecution to any person appearing before a legislative committee.  Id. at 433-34.  The United States Supreme Court reversed, finding that the appellants' convictions violated the Due Process Clause of the Fourteenth Amendment.  Id. at 437.  The Court explained:

> [H]ere the Chairman of the Commission, who clearly appeared to be the agent of the State in a position to give such assurances, apprised three of the appellants that the privilege in fact existed, and by his behavior toward the fourth obviously gave the same impression.

---

[11]  "Despite its descriptive terminology, the defense of entrapment by estoppel 'stems from the due process clause, not from the common law of contract, equity or agency." United States v. Austin, 915 F.3d 363 (8th Cir. 1990) (quoting United States v. Brady, 710 F. Supp. 290, 295 (D. Colo. 1989)).

* * *

> While there is no suggestion that the Commission had any intent to deceive the appellants, we repeat that to sustain the judgment of the Ohio Supreme Court on such a basis after the Commission had acted as it did would be to sanction the most indefensible sort of entrapment by the State— convicting a citizen for exercising a privilege which the State clearly had told him was available to him. Cf. Sorrells v. United States, 287 U.S. 435, 442, 53 S.Ct. 210, 212, 77 L.Ed. 413. A State may not issue commands to its citizens, under criminal sanctions, in language so vague and underfined as to afford no fair warning of what conduct might transgress them. Lanzetta v. State of New Jersey, 306 U.S. 451, 59 S.Ct. 618, 83 L.Ed. 888. Inexplicably contradictory commands in statutes ordaining criminal penalties have, in the same fashion, judicially been denied the force of criminal sanctions. United States v. Cardiff, 344 U.S. 174, 73 S.Ct. 189, 97 L.Ed. 200. Here there were more than commands simply vague or even contradictory. There was active misleading. Cf. Johnson v. United States, 318 U.S. 189, 197, 63 S.Ct. 549, 553, 87 L.Ed. 704. The State Supreme Court dismissed the statements of the Commission as legally erroneous, but the fact remains that at the inquiry they were the voice of the State most presently speaking to the appellants. We cannot hold that the Due process clause permits convictions to be obtained under such circumstances.

Id. at 437-39 (footnote omitted).

In Cox v. Louisiana, 379 U.S. 559 (1965), the appellant Cox was convicted of violating a state statute that criminalized picketing near a courthouse with the intent of influencing a juror, witness or court official. Id. at 560. Cox, a demonstrator, had been told by the Chief of Police in the presence of the Sheriff and Mayor that he and his fellow protestors could assemble across the street from the courthouse. Id. at 569-70. The Supreme Court reversed Cox's conviction, holding that "under all the circumstances of this case, after the public officials acted as they did, to sustain appellant's later conviction for demonstrating where they told him he could 'would be to sanction an indefensible sort of entrapment by the State—convicting a citizen for exercising a

privilege which the State had clearly told him was available to him.'" Id. at 571 (quoting Raley, 360 U.S. at 426).

In Alcorn, police visited appellant Alcorn's home on August 11, 2009, after a helicopter spotted marijuana plants growing on Alcorn's property.  638 F.3d at 821. Alcorn voluntarily showed the officers marijuana plants and processed marijuana on the premises, which the officers seized. Id.  A few days later, Officer Dougherty returned to Alcorn's home and asked if there were any firearms in the house. Id.  Alcorn showed Dougherty his bedroom closet and told him that there was a shotgun inside. Id. Dougherty inspected the shotgun but did not seize it during that visit. Id. On August 20, 2009, Dougherty and ATF Special Agent Taylor returned to Alcorn's home and seized the shotgun. Id.  Appellant was charged and convicted of manufacturing marijuana and being a felon in possession of a firearm. Id.  On appeal, Alcorn challenged the district court's denial of his motion for acquittal on the basis of entrapment. Id. at 823.  Alcorn contended that Officer Dougherty's "nonverbal act of leaving the firearm in [Alcorn's] closet upon discovering it on his second visit was a powerful inducement by an agent of the government to commit the illegal act." Id. (internal quotation marks omitted).  The Eighth Circuit rejected Alcorn's argument and affirmed his convictions, reasoning that "the record gives no indication that Dougherty was guilty of any 'affirmative misconduct' or that he ever assured Alcorn that his possession of the gun was legal." Id. (citing Benning, 248 F.3d at 775).  The court stated that "Dougherty never told Alcorn that his possession of a gun was anything but illegal," and "Dougherty made no statements or actions which could be construed as actively misleading Alcorn into believing that his possession of the shotgun was lawful." Id.

Based on the above legal authority, this Court concludes that the Meeker County District Court's decision was not contrary to, or based on an unreasonable application of, clearly established Supreme Court law.   The transcript of the Implied Consent Advisory reading confirms that Deputy Pedersen never told Petitioner that he was entitled to <u>Miranda</u> protections or that he could legally refuse to submit to blood-alcohol testing.   Thus, unlike in <u>Raley</u> and <u>Cox</u>, there was no affirmative statement from a government official assuring Petitioner that his actions were permissible.   To the contrary, Deputy Pedersen expressly warned Petitioner that "[r]efusal to take a [blood-alcohol] test is a crime."   Appx. III, Ex. 2, p. 709.

Further, although Deputy Pedersen did not correct or disavow Petitioner's mistaken belief that he was entitled to <u>Miranda</u> protections, this did not constitute "affirmative misconduct" or "active misleading" such that Petitioner's reliance on the deputy's silence was reasonable.   <u>See Alcorn</u>, 638 F.3d at 823.   Essentially, Petitioner's argument is that Deputy Pedersen failed to sufficiently explain which laws applied to his situation and which laws did not.   However, "an incomplete explanation of law cannot support an estoppel-by-entrapment defense."   <u>United States v. Ray</u>, 411 F.3d 900, 904 (8th Cir. 2005) (citing <u>Benning</u>, 248 F.3d at 776).

In <u>Ray</u>, the Eighth Circuit found instructive the Ninth Circuit's holding in <u>United States v. Ramirez-Valencia</u>, 202 F.3d 1106, 1109 (9th Cir. 2000).   <u>Ray</u>, 411 F.3d at 904. In <u>Ramirez-Valencia</u>, the defendant was convicted for returning to the United States more than five years after being deported, and the defendant indicated that he had relied on an Immigration and Naturalization Service form, which stated that "any deported person who within five years returns without permission is guilty of a felony."

Id. at 1108 (citation omitted). Although the form did not say that returning more than five years after being deported was a felony (even though it was), the Ninth Circuit held that the form did not support an estoppel-by-entrapment defense because it "'did not expressly tell the defendant that it was lawful for him to return to the United States after five years.'" Id. at 1109.

Here, not only did Deputy Pedersen not provide Petitioner with a Miranda warning, but as in Ray, Deputy Pedersen never expressly told Petitioner that Miranda warnings were or were not required before asking him to submit to blood-alcohol testing. As such, Petitioner has failed to demonstrate that he was entitled to an entrapment-by-estoppel defense.

The Meeker County District Court similarly rejected Petitioner's entrapment argument. The court correctly identified the applicable legal principle that –

> [w]here the responses of the arrested person upon being requested to submit to a chemical test indicate that he is asserting a [Miranda] right which he has just been told he is free to assert, it is incumbent upon the officer to make clear that he has no constitutional right to consult an attorney before deciding whether he will submit to a test . . . .

Appx. I, Ex. 1, p. 21.[12] However, because "the deputy properly did not provide [Petitioner] with Miranda warnings," the court concluded that there was no duty for

---

[12]   The Court does not have the benefit of Petitioner's briefs to the trial court in which he sought suppression and dismissal of his refusal to take the chemical test. See Appx. I, Ex. 1 (Omnibus Order), p. 19 n. 4. However, it is evident from the transcript of the omnibus hearings that Petitioner did raise his right to a Miranda warning, citing the Fifth Amendment to the Constitution. See Appx. III, Ex. 1 (Transcript of Meeker County District Court Hearings, Volume I), pp. 24, 45-46, 259, 262, 265-66, 272-73, 276-78. Although the Meeker County District Court did not expressly address Petitioner's entrapment claim under federal law, except for its reference to Neville, this Court will presume that the federal grounds were adjudicated on the merits. Dansby v. Hobbs, 766 F.3d 809, 832 (8th Cir. 2014) ("'When a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal

Deputy Pedersen to clarify that <u>Miranda</u> rights were inapplicable to the Implied Consent

Advisory.  Appx. I, Ex. 1, pp. 21-22.  This decision was entirely reasonable in light of

clearly established Supreme Court precedent, as set forth above.  Accordingly, because

Petitioner has not demonstrated that the state court's decision was contrary to, or

involved an unreasonable application of, clearly established Supreme Court law, or was

based on an unreasonable determination of the facts in light of the evidence presented,

Petitioner's entrapment claim must be dismissed.

### C.   <u>Interference with Petitioner's Attorney Phone Call</u>

Petitioner's second claim is that he was "under duress" or "inhibited" from

consulting with an attorney during the Implied Consent Advisory because Deputy

Pedersen was attempting to audio record the phone call, a violation of his Fifth

Amendment right against self-incrimination and his Sixth Amendment right to counsel.[13]

---

claim was adjudicated on the merits—but that presumption can in some limited circumstances be rebutted.'") (quoting <u>Johnson v. Williams</u>, 133 S.Ct. 1088, 1096 (2013)).  The Court also notes that the Meeker County District Court was not required to cite controlling Supreme Court precedent to avoid its decision being "contrary to" or an "unreasonable application of" clearly established Supreme Court law under 28 U.S.C. § 2254(d).  <u>Early v. Packer</u>, 537 U.S. 3, 8 (2002).  In fact, determining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be <u>any</u> reasoned opinion or explanation of reasoning.  <u>Harrington v. Richter</u>, 562 U.S. 86, 98 (2011) (collecting cases).

[13]   To the extent Petitioner has alleged violations of the common law doctrine of attorney-client privilege, (<u>see</u> Pet.'s Mem., pp. 3, 4), that claim is not cognizable on federal habeas review.  "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, law or treaties of the United States."  <u>Estelle v. McGuire</u>, 502 U.S. 62, 67 (1991); <u>see</u> also <u>Wainwright v. Goode</u>, 464 U.S. 78, 83 (1983) (per curiam) ("It is axiomatic that federal courts may intervene in the state judicial process only to correct wrongs of a constitutional dimension"); 28 U.S.C. § 2254(a) ("[A] district court shall entertain an application for a writ of habeas corpus . . . only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.").  "In the habeas context, '[r]ules of evidence and trial procedure are usually matters of state law. A federal issue is raised only where trial errors infringe on a specific constitutional protection or are so prejudicial as to amount to a denial of

### 1.   Fifth Amendment

"The Fifth Amendment grants to all persons the privilege against compelled self-incrimination by providing that '[n]o person ... shall be compelled in any criminal case to be a witness against himself.'"  United States v. McFarlane, 309 F.3d 510, 513 (8th Cir. 2002) (quoting U.S. Const. amend. V).   "The Supreme Court has limited the Fifth Amendment privilege to prohibiting the use of physical or moral compulsion; the fact that a criminal defendant faces difficult choices does not necessarily compel the individual's choice so as to implicate the Fifth Amendment."  Id. (citing Neville, 459 U.S. at 562-63).

Under Miranda v. Arizona, 384 U.S. 436 (1966), any time an individual is taken into custody for interrogation, she must be advised of her right to be free from compulsory self-incrimination and the right to the assistance of counsel.  Id. at 444; see also United States v. Griffin, 922 F.2d 1343, 1347 (8th Cir. 1990).  On the other hand, "a refusal to take a blood-alcohol test, after a police officer has lawfully requested it, is not an act coerced by the officer, and thus is not protected by the privilege against self-incrimination."  Neville, 459 U.S. at 564.

> In the context of an arrest for driving while intoxicated, a police inquiry of whether the suspect will take a blood-alcohol test is not an interrogation within the meaning of Miranda. . . . [P]olice words or actions "normally attendant to arrest and custody" do not constitute interrogation. The police inquiry here is highly regulated by state law, and is presented in virtually the same words to all suspects. It is similar to a police request to submit to fingerprinting or photography. [A suspect]'s choice of refusal thus enjoys no

due process.'"  Bucklew v. Luebbers, 436 F.3d 1010, 1018 (8th Cir. 2006) (citation omitted).  Accordingly, the Court will consider only whether the alleged interference with Petitioner's ability to call an attorney violated his rights under the Fifth and Sixth Amendments.

> prophylactic <u>Miranda</u> protection outside the basic Fifth
> Amendment protection.

<u>Id.</u> at 564 n. 15 (citation omitted).

In this case, the trial court concluded that suppression of Petitioner's test refusal was not warranted because Deputy Pedersen was not required to give Petitioner a <u>Miranda</u> warning before the Implied Consent Advisory.  Appx. I, Ex. 1, pp. 12, 21.  As set forth in <u>Neville</u>, a police request to submit to chemical testing is not an "interrogation" within the meaning of <u>Miranda</u>, and thus, Petitioner had no right under the Fifth Amendment to consult with counsel in connection with the Implied Consent Advisory.  Consequently, even if Petitioner was "inhibited" from contacting an attorney due to Deputy Pedersen's alleged attempt to tape record the phone call, such action did not constitute a violation of Petitioner's Fifth Amendment rights.

### 2.   Sixth Amendment

The Sixth Amendment to the United States Constitution provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."   "[A]n accused does not enjoy the effective aid of counsel if he is denied the right of private consultation with him.'"  <u>Mastrian v. McManus</u>, 554 F.2d 813, 821 (8th Cir. 1977) (citations omitted).

"The long-standing rule is that the Sixth Amendment right to counsel does not attach until 'the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.'"  <u>United States v. Morriss</u>, 531 F.3d 591, 593 (8th Cir. 2008) (quoting <u>Kirby v. Illinois</u>, 406 U.S. 682, 689 (1972)); <u>see</u> <u>also</u> <u>Davis v. United States</u>, 512 U.S. 452, 456-57 (1994) ("The Sixth Amendment right to counsel attaches only at the initiation of adversary criminal

proceedings, and before proceedings are initiated a suspect in a criminal investigation has no constitutional right to the assistance of counsel.") (internal citation omitted).

The Supreme Court has also "extended an accused's right to counsel to certain 'critical' pretrial proceedings . . . ." <u>United States v. Gouveia</u>, 467 U.S. 180, 189 (1984) (citation omitted); <u>see also</u> <u>Missouri v. Frye</u>, 132 S. Ct. 1399, 1405 (2012) ("The Sixth Amendment guarantees a defendant the right to have counsel present at all critical stages of the criminal proceedings.") (internal quotation marks omitted) (citation omitted). "Critical stages include arraignments, postindictment interrogations, postindictment lineups, and the entry of a guilty plea." <u>Id.</u> (citations omitted). On the other hand,

> [i]t is clear that scientific analyses of evidence such as "fingerprints, [a] blood sample, clothing, hair and the like ... are not critical stages since there is minimal risk that his counsel's absence at such stages might derogate from his right to a fair trial." [<u>United States v. Wade</u>, 388 U.S. 218, 227–28 (1967)]. "The denial of a right to have [the defendant's] counsel present at such analyses does not therefore violate the Sixth Amendment...." <u>Id.</u> at 228, 87 S.Ct. 1926; <u>see also</u> <u>South Dakota v. Neville</u>, 459 U.S. 553, 559 n. 8, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983); <u>Schmerber v. California</u>, 384 U.S. 757, 765–66, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966); <u>Freeman v. Jackson</u>, 107 F.3d 875 (8th Cir. 1997) (unpublished table decision) (holding that defendants have no right to consult with counsel prior to giving blood and saliva samples) (citing <u>Neville</u>, 459 U.S. at 559 n. 8, 103 S.Ct. 916; <u>Schmerber</u>, 384 U.S. at 765–66, 86 S.Ct. 1826).

<u>United States v. Lewis</u>, 483 F.3d 871, 874 (8th Cir. 2007); <u>see also</u> <u>Simon v. Reiser</u>, Civ. No. 11-137 (DWF/JJG), 2012 WL 2884869, at *8 (D. Minn. April 10, 2012) ("Petitioner did not have a right to counsel in connection with his urinalysis because the ordering and administering of the urinalysis was not a critical stage of his prosecution

and, therefore, there is no Sixth Amendment violation."), report and recommendation adopted, 2012 WL 2885078 (D. Minn. July 13, 2012).

Here, Petitioner had no Sixth Amendment right to counsel during the Implied Consent Advisory.   As in Lewis, the taking of Petitioner's blood, breath or urine for chemical analysis created only a minimal risk that the absence of counsel would have affected his right to fair trial.   Therefore, the Implied Consent Advisory was not a "critical stage" of criminal prosecution.   Further, at the time Petitioner was asked to submit to blood-alcohol testing, the State had not yet initiated adversarial criminal proceedings against him by way of a formal charge, preliminary hearing, indictment, information, or arraignment.   As such, Petitioner's Sixth Amendment rights had not even attached.[14]

---

[14]    The Minnesota Supreme Court has held that "an individual has the right, upon request, to a reasonable opportunity to obtain legal advice before deciding whether to submit to chemical testing." Friedman v. Comm'r of Pub. Safety, 473 N.W.2d 828, 835 (Minn. 1991).   However, Friedman was premised on the court's interpretation of article I, section 6 of the Minnesota Constitution, and not the Federal Constitution. See State v. Webster, 642 N.W.2d 488, 491 (Minn. Ct. App. 2002) ("Thus, the cases that establish a driver's limited right to consult with an attorney before deciding whether to submit to a chemical test in Minnesota derive that right from article I, section 6 of the Minnesota Constitution, not the Sixth Amendment to the United States Constitution."); Gergen v. Comm'r of Pub. Safety, 548 N.W.2d 307, 311 (Minn. Ct. App. 1996) ("Friedman was decided solely on the basis of the state Constitution.") (emphasis in original) (citation omitted).   Indeed, in Nyflot v. Comm'r of Pub. Safety, 369 N.W.2d 512 (Minn. 1985), the Minnesota Supreme Court recognized that, under the Federal Constitution, a defendant does not have a right to counsel before deciding whether to submit to chemical testing.

However, even if under federal law, Petitioner's right to counsel had attached at the time of the Implied Consent Advisory, no Sixth Amendment violation occurred.   "To establish a sixth amendment violation, a criminal defendant must show two things: first, that the government knowingly intruded into the attorney-client relationship; and second, that the intrusion demonstrably prejudiced the defendant, or created a substantial threat of prejudice." United States v. Singer, 785 F.2d 228, 234 (8th Cir. 1986) (internal citations omitted); see also United States v. Tyerman, 701 F.3d 552, 559 (8th Cir. 2012) ("To establish a Sixth Amendment claim based on violation of the attorney-client privilege, this court requires the defendant to prove 'that the government knowingly intruded into the attorney-client relationship.'") (citation omitted).   "Evidence that a party monitored the accused's conversations with his attorney does not necessarily establish

Accordingly, even if Deputy Pedersen had intentionally interfered with Petitioner's ability to consult with counsel, no Sixth Amendment violation occurred.

Based on state law, the Meeker County District Court determined that Deputy Pedersen was not required to provide Petitioner an opportunity for a private phone consultation with an attorney.  Appx. I, Ex. 1, pp. 12, 19-20.  This decision was neither contrary to, nor an unreasonable application of, clearly established Supreme Court precedent.  Accordingly, Petitioner's claim that he was inhibited from contacting an attorney should be dismissed.

## C.   Judicial Bias

Petitioner's final challenge to his conviction was that the Meeker County District Court was biased in adjudicating his case, in violation of his right to due process of law.

"Every defendant is entitled to a fair trial in a fair tribunal, and fairness 'requires an absence of actual bias in the trial of cases.'"  Ward v. Norris, 577 F.3d 925, 937 (8th

---

a Sixth Amendment violation. Rather, the accused must show, in addition, that the substance of the overheard conversation was of some benefit to enforcement officials." Mastrian, 554 F.2d at 821 (footnote omitted); Clark v. Wood, 823 F.2d 1241, 1249-50 (8th Cir. 1987) ("Accordingly, we hold that assuming the alleged monitoring took place, and assuming that the monitoring constituted a Sixth Amendment violation, Clark is not entitled to relief because he has failed to demonstrate that the substance of the overheard conversations were used against him.") (citing United States v. Morrison, 449 U.S. 361, 365 (1981)).  Here, even if Deputy Pedersen had knowingly intruded into Petitioner's attorney-client relationship by recording any conversation he might have with an attorney, there is no evidence that the intrusion demonstrably prejudiced Petitioner.  First, since Petitioner never attempted to contact an attorney, there is no possibility that any privileged communications were used against him.  Second, even if he had contacted an attorney and his conversation had been recorded, state law precluded use of this conversation during the criminal prosecution of defendant.  See Erickson v. Koochiching Cty., Civ. No. 05-716 (JRT/RLE), 2006 WL 752949, at *15 (D. Minn. Mar. 22, 2006) (citations omitted), rev'd on other grounds sub nom. Sherbrooke v. City of Pelican Rapids, 513 F.3d 809, 815 (8th Cir. 2008); Campbell, 494 N.W. 2d at 270; Held, 246 N.W.2d at 864.  Accordingly, even if Petitioner had a right to consult with counsel prior to undergoing blood-alcohol testing, no violation of the Sixth Amendment occurred.

Cir. 2009) (quoting In re Murchison, 349 U.S. 133, 137 (1955)).  Additionally, "'[c]learly established Federal law, as determined by the Supreme Court of the United States', 28 U.S.C. § 2254(d)(1), recognizes not only actual bias, but also the appearance of bias, as grounds for disqualification[.]"  Jones v. Luebbers, 359 F.3d 1005, 1012 (8th Cir.), cert. denied, 543 U.S. 1027 (2004); see also United States v. Wessels, 539 F.3d 913, 914 (8th Cir. 2008) ("Due process requires that a trial proceed before a judge with no actual bias against the defendant or interest in the outcome of the particular case.  The appearance of bias may also be a ground for disqualification.") (citations omitted).

"Although clearly established, this standard is inherently vague."  Jones, 359 F.3d at 1012 (citing Murchison, 349 U.S. at 136).  The situation must be one "'in which experience teaches that the probability of actual bias on the part of the judge ... is too high to be constitutionally tolerable,' such as where the judge 'has a pecuniary interest in the outcome' or where 'he has been the target of personal abuse or criticism from the party before him.'"  Kinder v. Bowersox, 272 F.3d 532, 540 (8th Cir. 2001) (quoting Withrow v. Larkin, 421 U.S. 35, 47 (1975); Aetna Life Ins. Co. v. Lavoie, 475 U.S. 813, 821 (1986)).  On the other hand, "[t]he 'opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible.'"  Ryan v. Clarke, 387 F.3d 785, 794 (8th Cir. 2004) (quoting Liteky v. United States, 510 U.S. 540, 555 (1994)).  As such, "'[a]n unfavorable judicial ruling … does not raise an inference of bias or require the trial judge's recusal.'"  Moran v. Clarke, 296 F.3d 638, 649 (quoting Harris v. Missouri, 960 F.2d 738, 740 (8th Cir. 2002)).

In the present case, Petitioner alleged that Judge Smith "rudely" interrupted his oral argument during the Omnibus hearing on January 27, 2012.  Specifically, Petitioner referenced the following exchange:

> Petitioner: I had put in here based off some of the transcript which is legible that under the <u>Riley v. Ohio</u> [sic] – that would be on page 12 – that the defendant made comments that were misleading and confusing in regards to my request to not be questioned without an attorney present, which this defendant has numbered the lines of the transcripts that I had supplied on the implied consent advisory attached to this motion.  The deputy stated confusing and misleading things in regards to this defendant's right such as see page 2, lines 26 –

> The Court: Sir, I have already read this.  You have very limited time.  Could I please encourage you to go to your next issue.  I'm afraid you might not get everything argued here today.  You've put it in writing.  I've reviewed it.  I will look at it again.

> Petitioner: Okay.

> The Court: I promise.

Appx. III, Ex. 1, pp. 274-75.  According to Petitioner, this exchange showed that Judge Smith "influence[d] Petitioner to move to his next argument by pressuring the Petitioner with time constraints arbitrarily . . . ."  Pet.'s Mem., p. 30.  Petitioner further asserted that even though Judge Smith promised to look at his written submission again, the court in its written Omnibus Order "did not specifically rule on the issues of why or why not the deputy's actions proposed by the Petitioner were misleading and confusing . . . ."  <u>Id.</u>

Contrary to Petitioner's argument, this Court does not find that Judge Smith was seeking to interrupt or influence Petitioner's argument.  Rather, the record shows that Judge Smith was merely attempting to remind Petitioner that his time for oral argument

was limited.   During the exchange referenced by Petitioner above, the court warned

Petitioner that he had "very limited time" and that he "might not get everything argued

here today."   Additionally, earlier in Petitioner's oral argument, Judge Smith had stated:

> Mr. Isaacson, I don't want to pressure you, but I only have 'til
> noon today.  You've got a lot of other issues, and you have
> really quite fully briefed these.   I think I understand your
> argument here quite well.

Appx. III, Ex. 1, p. 272.

Later, the Assistant Meeker County Attorney, Angella Erickson, objected to

Petitioner's argument as cumulative, and the following conversation ensued:

| Ms. Erickson: | Your Honor, I'm sorry.  This is – I'm objecting as cumulative.  [Petitioner is] reading directly from his written argument that he's already submitted and the Court has already stated it will review.  And additionally, I'm sorry for interrupting, but I need to use the restroom.  Is it possible that we could take a break? |
|---|---|
| Petitioner: | Yeah, I kind of do, too. |
| The Court: | All right.  Let's take a five-minute break. But Mr. Isaacson, again I'm really not trying to pressure you, but I only have 'til noon and Ms. Erickson is also entitled to make an argument. |
| Petitioner: | All right. |

Id., p. 282.

Given this context, it is clear that Judge Smith was not attempting to impede

Petitioner's argument.   To the contrary, the court was helping Petitioner budget his time

so that he could make a complete and effective presentation.   Judge Smith's comments

did not in any way suggest that she harbored personal hostility or prejudice towards

Petitioner.

As for Petitioner's assertion that Judge Smith failed to rule specifically on the issue of whether Deputy Pedersen's actions or comments were misleading, that contention is meritless.  In her Omnibus Order, Judge Smith fully addressed the issue of whether Deputy Pedersen's failure to provide a <u>Miranda</u> warning or to disavow the applicability of <u>Miranda</u> to the Implied Consent Advisory was impermissibly misleading. <u>See</u> Appx. I, Ex. 1, pp. 21-22.  Although Judge Smith did not proceed line-by-line to discuss whether each particular statement by Deputy Pedersen was or was not misleading, her findings of fact included a transcription of the entire Implied Consent Advisory reading at the Meeker County Jail, and there is no indication that Judge Smith failed to consider all of this information in making her decision.  Further, Chief Judge Drange of the Eighth Judicial District found that "the record does not show that Judge Smith was biased or prejudiced against Defendant, <u>but only that her rulings were adverse to Defendant</u>."  Appx. III, Ex. 3 (emphasis added).    As previously noted, a judicial ruling, even if ill-founded, is not a sufficient ground to raise an inference of bias. <u>See</u> <u>Ward v. Norris</u>, 577 F.3d 925, 937 (8th Cir. 2009) ("However ill-founded [a] trial court's reasoning may have been, its rulings on those requests [do] not reflect actual or presumed bias rising to the level of a constitutional violation or a structural error.") (citations omitted).

Based on the foregoing analysis, the state court's findings were not contrary to, or based on an unreasonable application of, clearly established federal law as

determined by the United States Supreme Court.   Accordingly, Petitioner's claim of judicial bias must be dismissed.[15]

## III.   CERTIFICATE OF APPEALABILITY

The Court may grant a certificate of appealability only where a petitioner has made a substantial showing of the denial of a constitutional right. See 28 U.S.C. § 2253(c)(2); Copeland v. Washington, 232 F.3d 969, 977 (8th Cir. 2000).   To make such a showing, the legal issues must be debatable among reasonable jurists, a court must be able to resolve the issues differently, or the issue must warrant further proceedings. See Flieger v. Delo, 16 F.3d 878, 882-83 (8th Cir. 1994); see also McDaniels v. Olmstead Cnty., 402 F. App'x 155, 156 (8th Cir. 2010) ("The district court denied McDaniels's habeas petition but granted him a certificate of appealability as to the alleged conflict question, concluding that the question is 'debatable among reasonable jurists.'") (citation omitted).   In this case, the legal issues raised by Petitioner are not debatable among reasonable jurists, and another court would not have decided the issues raised in this § 2254 motion differently.    For this reason, the Court concludes that Petitioner has failed to make the required substantial showing of the denial of a constitutional right, and the Court recommends that no certificate of appealability be issued.

---

[15]    Although Petitioner's claim of judicial bias against the Minnesota Court of Appeals has been procedurally defaulted, this Court notes that the claim would have failed on the merits.   Petitioner asserted that the appellate court "d[id] not mention the argument that was ignored by the [Meeker County] District Court, which was the deputy misled Petitioner about his Miranda rights during the DWI-Implied Consent and that that potentially entrapped Petitioner into allegedly committing the crime of test-refusal." Pet.'s Mem., p. 32.   However, as stated previously, a state court's decision does not require that there be any reasoned opinion or explanation of reasoning, and a judicial ruling by itself is insufficient to establish a presumption of bias.

**IV.    RECOMMENDATION**

For the reasons set forth above, and based upon all the files, records and proceedings herein, IT IS HEREBY RECOMMENDED that

1.    Petitioner Corey Isaacson's Amended Petition Under 28 U.S.C. 2254 For Writ of Habeas Corpus by a Person in State Custody [Docket No. 25] be **DENIED** and this matter be DISMISSED WITH PREJUDICE.

2.    No certificate of appealability be issued.


Dated:        January 8, 2016                    *s/ Janie S. Mayeron*
                                                 JANIE S. MAYERON
                                                 United States Magistrate Judge


### NOTICE

Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **January 22, 2016**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  A party may respond to the objecting party's brief within fourteen days after service thereof.  All briefs filed under this Rule shall be limited to 3500 words.  A judge shall make a de novo determination of those portions to which objection is made.    This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.